IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ELITE MECHANICAL & WELDING, LLC** | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civ. No. DLB-22-3257 |
| | * | |
| **CHALK POINT POWER, LLC,** *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

**MEMORANDUM OPINION**

Elite Mechanical and Welding, LLC ("Elite") provided mechanical and welding services to Chalk Point Power, LLC ("Chalk Point") at various locations in Maryland. Chalk Point initially paid Elite for its services by paper check. Elite was paid without incident. Then Elite agreed to receive payments from Chalk Point by electronic fund transfer using an Automatic Clearing House ("ACH"). At first, Chalk Point made ACH transfers to Elite's bank account. But at some point, Chalk Point received and granted requests from individuals and entities impersonating Elite to change the account for these payments, thereby diverting the payments to accounts not affiliated with Elite. After Chalk Point missed nearly $800,000 in payments, Elite sued Chalk Point and individuals and entities that own or are associated with accounts to which diverted funds were received or requested. Several of the account owners and affiliates filed motions to dismiss the claims against them. For the following reasons, the Court grants the motions, dismisses Elite's claims against these defendants, and dismisses all but Elite's breach of contract claim against the remaining defendants.

**I.    Background**

These are the facts alleged by Elite. In late 2014, Chalk Point engaged Elite to provide mechanical and welding services at the Chalk Point Generating Station in Aquasco, Maryland ("Chalk Point location"). ECF 59, ¶ 21. In 2017, Elite started performing jobs at Chalk Point's Morgantown Generating Station in Newburg, Maryland ("Morgantown location"). *Id.* ¶ 24. Elite completed over 1,000 jobs at these locations. *Id.* ¶ 25.

The logistics of their business relationship was straightforward. Chalk Point would provide Elite a purchase order with the scope of work, terms, and price; Elite would perform the work; and Elite would provide an invoice to Chalk Point. *Id.* ¶¶ 22–23. At first, Chalk Point paid these invoices by paper check. *Id.* ¶ 26. Eventually, Chalk Point asked to pay Elite by electronic fund transfer using an ACH. *Id.* ¶ 27. Elite submitted to Chalk Point a form with ACH directions, and Chalk Point began making payments to Elite's bank account at First United Bank & Trust, one of Elite's two bank accounts. *Id.* ¶¶ 27, 29–31.

In October 2021, Chalk Point stopped making regular payments to Elite. *Id.* ¶ 32. Unpaid invoices for work performed at the Chalk Point location total $633,569.59, and unpaid invoices for work performed at the Morgantown location total $150,026.42. *Id.* ¶¶ 33–34. Presumably before Elite stopped receiving payments, Chalk Point received requests to change the recipient of Elite's payments. *Id.* ¶ 37. "Upon information and belief," Chalk Point started diverting payments that were intended for Elite. *Id.* ¶ 36. Chalk Point "received many different requests to change the payment recipient, many of which failed" and considered returning to paper check payments, but it was "ultimately persuaded not to do so." *Id.* ¶ 37. Chalk Point never called Elite to confirm a change in ACH payment, nor did it otherwise "make personal or verbal contact" with Elite or its agents to discuss the "discrepancies." *Id.* ¶¶ 37, 39. In July 2022, Pat Middleton of Chalk Point

informed Elite that Chalk Point had received 18 fund transfer returns in response to Chalk Point's efforts to pay Elite at several different banks—none of which were the bank that Elite had designated to receive the ACH transfers. *See id.* ¶¶ 29–30, 38.

On September 29, 2022, Elite mailed invoice summaries and a letter demanding payment to Chalk Point. *Id.* ¶ 35. Chalk Point has refused to pay Elite $734,795.59. *Id.* ¶ 40. Elite had to take out a loan to support its business. *Id.* ¶ 41.

Chalk Point investigated the matter and obtained paperwork concerning accounts where Chalk Point had transferred funds intended for Elite, including accounts at Wells Fargo Bank and Citizens Bank. *Id.* ¶ 42. "[H]ackers/scammers" sent fraudulent ACH instructions to Chalk Point to divert payments intended for Elite into accounts at Chase Bank, Capital One Bank, Citizens Bank, Bank of America, PNC Bank, Wells Fargo Bank, Go2 bank, and BMO Harris Bank. *See id.* ¶ 43. Funds "may or may not have been actually transferred" to these accounts. *Id.* Chalk Point either successfully sent funds or attempted ACH transfers to accounts at several of these banks. *Id.* ¶¶ 16–17. Accounts that received Chalk Point funds intended for Elite include a Citizens Bank account owned by defendant Gilles Edouard Leviton, president of defendant Tedd & Brooks Foundation Inc. ("Tedd & Brooks Foundation"); a Wells Fargo Bank account owned by defendant Gayle R. Brown (a/ka/a Gayle Jackson, a/k/a Gayle R. Jackson, a/k/a Gayle Renah Brown); a Wells Fargo Bank account jointly owned by Corey and Christina Klebs ("the Klebs"); a Citizens Bank account owned by Zinatu Consulting LLC ("Zinatu"), whose members include Judith and Kenneth Nwafor ("the Nwafors"); and a Citizens Bank account owned by Chunco Investments ("Chunco"), a sole proprietorship owned and operated by Chukwuma Oguejiofor.[1] *Id.* ¶¶ 5–14.

---

[1] Elite alleges that, "[u]pon information and belief," Zinatu Consulting LLC is a fictitious name. ECF 59, ¶ 11.

Elite alleges that individuals who own, accessed, or had access to the bank accounts into which funds were transferred or requested sought to defraud Chalk Point out of money Chalk Point owed to Elite by diverting payments intended for Elite. *Id.* ¶¶ 16–17, 46–47. Elite further alleges that at least ten unknown individuals who owned accounts where funds were transferred or where ACH transfers were attempted at Chase Bank, Capital One Bank, Citizens Bank, Bank of America, PNC Bank, Wells Fargo Bank, Go2 bank, and BMO Harris Bank (unknown individuals identified as John Does 1–10) and at least five individuals who may be affiliated with and have received fraudulently transferred funds from accounts at these banks which they accessed or had access to (unknown individuals identified as John Does 11–15) "were involved in an ongoing criminal organization that repeatedly perpetrates wire fraud schemes such as the one perpetrated upon Chalk Point in the instant matter." *Id.* ¶¶ 16–17, 43–48.[2] These John Does and the named individuals and entities not affiliated with Chalk Point impersonated Elite and falsely represented to Chalk Point that Elite wanted to change recipient accounts for payments to induce Chalk Point to send money owed to Elite to these defendants' accounts. *Id.* ¶¶ 54–55. These parties hacked into Elite's email system and impersonated Elite representatives to defraud Chalk Point into wiring them money. *Id.* ¶¶ 60–61.

Elite filed a complaint against Chalk Point on December 16, 2022, asserting claims for breach of contract, unjust enrichment, negligence, and fraud. ECF 1. On Chalk Point's motion, ECF 19, the Court dismissed the claims for unjust enrichment, negligence, and fraud, ECF 26. After limited discovery, Elite amended its complaint to join additional defendants identified

---

[2] As to the John Doe defendants, Elite alleges that "[i]t cannot be known, at this juncture, exactly how many individuals were involved in or had access to the bank accounts identified herein. As such, the 'John Doe - #' designations are meant to be representative of – and provide to all parties as to- the existence of additional potential defendants who will need to be identified throughout the course of discovery." ECF 59, at 3 n.1.

4

through documents Chalk Point subpoenaed from various banks and to assert additional claims against those defendants. *See* ECF 52; ECF 47, ¶ 1; ECF 50-1. The additional defendants are the Tedd & Brooks Foundation, Brown, Leviton, the Klebs, Zinatu, the Nwafors, Chunco, Oguejiofor, and John Does 1–15 (collectively, "non-Chalk Point defendants").[3] ECF 52. Elite again amended its complaint to remove claims and requests for relief inadvertently included after the Court dismissed some of its claims against Chalk Point. ECF 55-1 & 59. The second amended complaint raises claims for a breach of contract against Chalk Point (Count I); identity theft against all non-Chalk Point defendants (Count II); invasion of privacy against all non-Chalk Point defendants (Count III); civil conspiracy against all non-Chalk Point defendants (Count IV); and a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all defendants (Count V). ECF 59. Chalk Point filed an answer. ECF 58.

On December 9, 2024, the Nwafors and Zinatu moved to dismiss the claims against them for failure to state a claim. ECF 91. On December 23, Oguejiofor and Chunco also moved to dismiss the claims against them on the same grounds. ECF 104. Elite opposed both motions. ECF 103 & 109. None of the defendants filed a reply. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## II.    Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have

---

[3] John Does 11–15 are not listed in the caption of the second amended complaint, but they are referred to throughout the pleading as "defendants." *See, e.g.*, ECF 59, ¶ 17. For purposes of this memorandum opinion and the accompanying Order, John Does 11–15 are treated as defendants. If Elite intended to name John Does 11–15 as defendants, the claims against them fail for the same reasons they fail against the other non-Chalk Point defendants.

pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). And the Court considers the complaint "in its entirety." *KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 607 (4th Cir. 2021) (quoting *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

**III.   Discussion**

The Nwafors, Zinatu, Chunco, and Oguejiofor (collectively, "the moving defendants") move to dismiss the claims against them for failure to state a claim upon which relief can be granted.[4]

**A. State-law Claims**

Elite's second amended complaint raises three state-law claims against the moving defendants: (1) identity theft, (2) invasion of privacy, and (3) civil conspiracy. The complaint fails to state any of these claims.

**1. Identity Theft Claim**

Elite asserts a claim for identity theft against all non-Chalk Point defendants. In the second amended complaint, Elite refers to Maryland Criminal Law § 8-301(c), which prohibits, in relevant part "knowingly and willfully assum[ing] the identity of another . . . with fraudulent intent to . . . get a benefit, credit, good, service, or other thing of value." Md. Code Ann., Crim. Law § 8-301(c). "Identity theft in Maryland is a crime, not a civil claim." *Sucklal v. MTGLQ Invs. LP*, No. WDQ-10-1536, 2011 WL 663754, at *5 & n.19 (D. Md. Feb. 14, 2011) (footnote omitted) (citing Md. Code Ann., Crim. Law § 8-301). And there is no private cause of action to enforce Crim. Law § 8-301(c). *See Johnson v. Nowcom Corp.*, No. JKB-18-3339, 2019 WL 3767505, at *6 (D. Md. Aug. 9, 2019). Elite fails to state a claim for identity theft. Because Elite cannot state such a claim against any of the non-Chalk Point defendants, the Court dismisses Count II of the second amended complaint in its entirety. *See id.*; *see also, e.g.*, *Estate of Jones ex rel. Jones v. City of Martinsburg*, No. 13-68, 2014 WL 2094225, at *6 (N.D. W. Va. May 20, 2014) (dismissing against non-moving

---

[4] Because the two motions to dismiss are substantially similar, and the relevant allegations against the moving defendants are virtually identical, the Court addresses the motions together.

defendants claim that sought to bring a civil cause of action to enforce a law that only provided for criminal sanctions because "the City's motion raise[d] a defect that applie[d] to all defendants named in this claim"); *J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849 F. Supp. 2d 586, 592 (D. Md. 2012) (dismissing claims against non-moving defendant because "plaintiff's allegations as to [that defendant's] liability are indistinguishable from those against [moving defendant]" and "plaintiff has had a full opportunity to brief the sufficiency of the allegations and, as a matter of law, they are equally deficient as to [the non-moving defendant]"); *Leach v. Smith*, No. 06-155, 2007 WL 1964457, at *5 (E.D. Va. July 2, 2007) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006)) (dismissing a claim against non-moving defendant *sua sponte* because "[t]he plaintiff's claim against [him] suffer[ed] from the same defect as against the [moving defendants]"), *aff'd*, 258 F. App'x 526 (4th Cir. 2007) (per curiam).

### 2. Invasion of Privacy Claim

Elite also asserts a claim for invasion of privacy. Elite alleges the non-Chalk Point defendants invaded its privacy by hacking into its email system and impersonating Elite representatives.

Maryland courts "have viewed with approval the Restatement's definition of the invasion of the right of privacy." *Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 450–51 (Md. 1984). The Restatement "outlines the four distinct branches of the tort." *Id.* Specifically,

> [t]he right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or (b) appropriation of the other's name or likeness, as stated in § 652C; or (c) unreasonable publicity given to the other's private life, as stated in § 652D; or (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

*Id.* (quoting Restatement (Second) of Torts § 652A(2)). However, "[a] corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for

8

any of the four forms of invasion covered by §§ 652B to 652E." Restatement (Second) of Torts § 652I, cmt. c; *see also King v. State Farm Mut. Auto. Ins. Co.*, 850 A.2d 428, 435 (Md. Ct. Spec. App. 2004) ("[T]he defendant, a corporation, has no personal right of privacy." (citing Restatement (Second) of Torts § 652I, cmt. c)); *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 467 (D. Md. 2008) ("Plaintiffs cannot state an invasion of privacy claim on behalf of IGS because '[a] corporation, partnership or unincorporated association has no personal right of privacy.'" (alteration in original) (citing Restatement (Second) of Torts § 652I, cmt. c)). Elite is an unincorporated association, and it "has no personal right of privacy." *See* Restatement (Second) of Torts § 652I, cmt. c. Thus, Elite has not stated a claim for invasion of privacy.

Because Elite cannot state an invasion of privacy claim against any of the non-Chalk Point defendants, Count III of the second amended complaint is dismissed in its entirety.

### 3. Civil Conspiracy Claim

Elite asserts a civil conspiracy claim against the non-Chalk Point defendants. "[C]ivil conspiracy 'is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'" *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 494 (Md. 2006) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). "Thus, '[n]o action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.'" *Id.* (alteration in original) (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 665 A.2d 1038, 1045 (Md. 1995)). And "an act which, if done by one alone, constitutes no ground of action on the case, cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 265 n.8 (Md. 1994) (quoting *Kimball v. Harman*, 34 Md. 407, 410–11 (1871)).

9

Elite rests its common-law civil conspiracy claim against non-Chalk Point defendants on the alleged identity theft and invasion of privacy. As explained above, Elite fails to state a cognizable claim for either identity theft or invasion of privacy. Because Elite has not alleged a cognizable tort, Elite cannot state a claim for civil conspiracy. Thus, the Court dismisses the common-law civil conspiracy claim against all non-Chalk Point defendants.

### B. RICO Claim

Elite's attempt to plead a civil RICO claim also fails. Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise" in interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The RICO statute provides "a private civil right of action to '[a]ny person injured in his business or property by reason of a violation of' the RICO provisions." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (alteration in original) (quoting 18 U.S.C. § 1964(c)). "[T]o provide society with a powerful response to the dangers of organized crime[,]" a successful RICO plaintiff "may recover not only costs and attorney's fees, but also *treble* damages." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citing 18 U.S.C. § 1964(c)). The Supreme Court has described RICO's remedies as "drastic." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233 (1989). The Fourth Circuit has advised that courts should "not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988). Rather, a civil RICO claim is "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *U.S. Airline Pilots Ass'n*, 615 F.3d at 317 (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). To state a civil RICO claim, a plaintiff must plausibly allege: (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). Elite fails to state a RICO claim because it has not plausibly alleged racketeering activity, a pattern of racketeering activity, or an enterprise.

First, Elite does not plausibly allege racketeering activity because it does not plead the predicate acts required for racketeering activity. "[R]acketeering activity" is defined by statute as a series of acts, "includ[ing] any act 'indictable' under specified federal statutes, as well as certain crimes 'chargeable' under state law, and any offense involving bankruptcy or securities fraud or drug-related activity that is 'punishable' under federal law." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 330 (2016) (citations omitted) (citing 18 U.S.C. § 1961(1)). These acts are known as "predicate act[s]." *See Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012) (quoting *Maiz v. Virani*, 253 F.3d 641, 671 (11th Cir. 2001)). "While private litigants may recover for racketeering injuries under 18 U.S.C. § 1964(c), their injuries must 'flow from the commission of the predicate acts.'" *Id.* (quoting *Sedima*, 473 U.S. at 497). "A plaintiff bringing a civil RICO action under § 1964(c) must adequately plead at least two predicate acts of racketeering . . . ." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004). A "conclusory allegation is insufficient to plead a predicate act." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 593 n.9 (D. Md. 2014). A plaintiff's "failure to plead sufficient facts to establish the elements of [the alleged] predicate act[s] would require that the amended complaint be dismissed." *Walters*, 684 F.3d at 440.

Elite merely alleges that "the conduct described" in the second amended complaint "amount[s] to 'racketeering activity'" under § 1961. *See* ECF 59, ¶ 67. However, Elite does not allege that the defendants committed any of the indictable, chargeable, or punishable offenses listed in § 1961(1). While Elite does allege a violation of Maryland's identity theft statute,

11

Maryland Criminal Law § 8-301, this crime is not one of the state-law charges that constitute "racketeering activity." *See* 18 U.S.C. § 1961(1)(A).

The only potential predicate act the Court can divine from Elite's second amended complaint is wire fraud. *See* ECF 59, ¶ 48 ("On information and belief John Does 1-15 were involved in an ongoing criminal organization that repeatedly perpetrates wire fraud schemes such as the one perpetrated upon Chalk Point in the instant matter."). In briefing, Elite argues as much when it states that it has "sufficiently state[d] the existence of . . . a pattern of email scamming" involving "requests made to Chalk Point for fraudulent wire transfers." *See* ECF 103, at 4; ECF 109-1, at 4–5. Wire fraud is an "indictable" offense under federal law that can serve as a predicate act for a RICO claim. *See* 18 U.S.C. § 1961(1)(B). "To plead wire fraud, a plaintiff must plausibly allege '(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme.'" *Bowen v. Adidas Am., Inc.*, No. 18-3118, 2020 WL 13076108, at *2 (D.S.C. Feb. 27, 2020) (quoting *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), *as amended* (Mar. 29, 2012)). When RICO allegations sound in fraud, the plaintiff must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Chambers*, 43 F. Supp. 3d at 586 ("[A]llegations of fraud—which Plaintiff raises in both her RICO and state law claims—are subject to a heightened pleading standard under Rule 9(b)."); *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009) ("When mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b)."); *Ekstrom v. Cong. Bank*, No. ELH-20-1501, 2020 WL 6565251, at *19 (D. Md. Nov. 9, 2020) ("Where a fraud claim is asserted as the predicate act for a civil RICO violation, Rule 9(b)'s particularity requirement applies."). Under Rule 9(b), the plaintiffs must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). These circumstances include "the time,

place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

The allegations in Elite's second amended complaint do not meet Rule 9(b)'s heightened pleading standard. Elite alleges that the non-Chalk Point defendants "hack[ed] into [Elite's] email system," "impersonat[ed] [Elite] in order to induce Chalk Point to send money owed to [Elite] to bank accounts controlled by them," "impersonat[ed] Elite representatives for the purposes of defrauding Chalk Point into wiring them money," and "conspir[ed] to steal [Elite's] identity for the purposes of falsely representing to Chalk Point that Plaintiff wished to change recipient accounts for receiving payments from Chalk Point." ECF 59, ¶¶ 54–55, 60–61. Elite also alleges that "hackers/scammers" sent fraudulent ACH instructions to Chalk Point relating to bank accounts affiliated with non-Chalk Point defendants. *See id.* ¶¶ 43–46. Even if these allegations met the particularity standard for the content of the false statements, Elite does not allege when these statements were made. Elite suggests that it is "clear from the pleadings that the alleged email hack occurred after October 2021, when Chalk Point '[ceased] making regular payments,' but prior to September 29, 2022, when [Elite] discovered it had not been paid and requested payment by Chalk Point." *See* ECF 103, at 5 (quoting ECF 59, ¶ 32); ECF 109-1, at 5–6 (quoting ECF 59, ¶ 32). At most, these allegations enable the Court to make a strained inference that the alleged wire fraud occurred at some point over a nearly year-long period, yet the more reasonable inference is that the alleged fraud occurred (or at least began) sometime *before* payments to Elite ceased in October 2021. Neither inference is sufficient to meet Rule 9(b)'s standard. Of course, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant

has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Elite has not cleared either of these hurdles.

Even if Elite had sufficiently pled predicate acts for its RICO claim, it has not pled a pattern of racketeering. "To demonstrate a *pattern* of [racketeering] activity, the plaintiff must show 'continuity plus relationship,' i.e., 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *U.S. Airline Pilots Ass'n*, 615 F.3d at 318 (quoting *H.J. Inc.*, 492 U.S. at 239). "RICO's continuity requirement—'centrally a temporal concept'—arises from Congress's concern with 'long-term criminal conduct.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). "Continuity refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (quoting *H.J. Inc.*, 492 U.S. at 241). "Closed-ended continuity may be established by a 'series of related predicates extending over a substantial period of time.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). "To allege open-ended continuity, a plaintiff must plead facts that demonstrate a 'threat of continuity,' i.e., facts that give rise to a reasonable expectation that the racketeering activity will 'extend[ ] indefinitely into the future.'" *U.S. Airline Pilots Ass'n*, 615 F.3d at 318 (alteration in original) (quoting *H.J. Inc.*, 492 U.S. at 242). And while "[t]here is no per se rule against a RICO claim involving only one victim," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000), the Fourth Circuit has held that a scheme with a "narrow focus," even if perpetrated "over a period of years," is not "a pattern within the meaning of RICO," *Flip Mortg. Corp.*, 841 F.2d at 538; *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (RICO plaintiffs' allegations did not satisfy continuity prong where "[d]efendants' actions were narrowly directed towards a single fraudulent

14

goal," "involved a limited purpose," "involved but one perpetrator," "involved but one set of victims," and "took place over approximately one year"); *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 274 (4th Cir. 2010) (per curiam) (finding that plaintiffs failed to "show 'a distinct threat of long-term racketeering activity'" where they "failed to plead with particularity that any other persons were similarly harmed by Defendants' alleged fraud").

Elite's second amended complaint contains only conclusory allegations that the defendants' conduct "amount[s] to or pose[s] a threat of continued criminal activity." *U.S. Airline Pilots Ass'n*, 615 F.3d at 318 (quoting *H.J. Inc.*, 492 U.S. at 239). Elite has alleged neither close-ended nor open-ended continuity. Although Elite alleges that there were "many different requests to change the payment recipient" for Chalk Point's payments to Elite," that "there were eighteen (18) A[C]H returns from Chalk Point attempting to pay Elite at several different banks," and that "[t]here were multiple other additional fraudulent ACH instructions sent by the hackers/scammers to Chalk Point relating to certain accounts" at various banks at which Elite did not have an account, there are no allegations suggesting that the defendants took these actions over an extended period of time, that the purported scheme involved other victims, or that there is otherwise a threat of continued criminal activity. *See* ECF 59, ¶¶ 37–38, 43. The only allegations about timing are that Chalk Point stopped making regular payments in October 2021, that Chalk Point informed Elite of 18 ACH returns in July 2022, and that Elite demanded payment nearly a year after regular payments stopped on September 29, 2022. These meager allegations do not adequately allege the timeframe of the purported racketeering activity. Nor does Elite's conclusory allegation that "[o]n information and belief John Does 1-15 were involved in an ongoing criminal organization that repeatedly perpetrates wire fraud schemes such as the one perpetrated upon Chalk Point in the instant matter" *id.* ¶ 48, implicate any of the named defendants or rise above the level of a "bare

15

assertion[] devoid of further factual enhancement[,]" *see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Similarly, the allegation that the defendants "[b]y engaging in the conduct described . . . conducted the affairs of an enterprise through a longstanding and ongoing pattern of racketeering," ECF 59, ¶ 68, is merely the recitation of this RICO claim element "support[ed] . . . by conclusory statements," *see Sheppard*, 993 F.3d at 234 (quoting *ACA Fin. Guar. Corp.*, 917 F.3d at 212).

Finally, Elite has not plausibly alleged the existence of a "RICO enterprise." The statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "'[A]n enterprise includes any union or group of individuals associated in fact[,]' and . . . RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 944 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981)). To plead a RICO enterprise, Elite must show "(1) an ongoing organization, (2) the various associates of which function as a continuing unit, and (3) the organization has an existence separate and apart from the alleged pattern of racketeering activity." *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 843 (D. Md. 2013) (citing *Turkette*, 452 U.S. at 583). While "a RICO enterprise need not have a rigid structure[,]" *United States v. Pinson*, 860 F.3d 152, 162 (4th Cir. 2017) (per curiam), "'[v]ague allegations of a RICO enterprise . . . lacking any distinct existence and structure' will not survive dismissal[,]" *Mitchell Tracey*, 935 F. Supp. 2d at 843 (alteration in original) (quoting *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)). Thus, while a RICO enterprise includes "a group of persons associated together for a common purpose of engaging in

a course of conduct[,]" *Turkette*, 452 U.S. at 583, such "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose[,]" *Boyle*, 556 U.S. at 946.

Elite's second amended complaint contains allegations that non-Chalk Point defendants were "co-conspirators in a plot to defraud Chalk Point out of payments owed to [Elite]," that they "conspire[d] to steal [Elite's] identity," and that they "acted as a confederation . . . to engage in . . . unlawful and tortious activities" against Elite. ECF 59, ¶¶ 46–47, 55, 64.[5] But these conclusory allegations do not adequately plead an "ongoing organization" that "function[s] as a continuing unit," or that has "an existence separate and apart from the alleged pattern of racketeering activity." *Mitchell Tracey*, 935 F. Supp. 2d at 843. Even for an "association-in-fact enterprise," Elite has not plausibly alleged "a purpose, relationships among those associated with the enterprise, [or] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.[6] At best, Elite's pleading contains "[v]ague allegations of a RICO enterprise" which

---

[5] Elite's conclusory allegation that "[o]n information and belief John Does 1-15 were involved in an ongoing criminal organization that repeatedly perpetrates wire fraud schemes such as the one perpetrated upon Chalk Point in the instant matter," ECF 59, ¶ 48, does not implicate the named defendants. And even if it did, the conclusory allegation does not suggest that an association exists separate from the alleged wire fraud scheme. The same goes for the similarly conclusory allegation that "the Defendants named herein conducted the affairs of an enterprise through a longstanding and ongoing pattern of racketeering," *id.* ¶ 68, which is insufficient to plausibly allege an entity "separate and apart from the alleged pattern of racketeering," *see Mitchell Tracey*, 935 F. Supp. 2d at 843; *see also, e.g.*, *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *4 (D. Md. Mar. 17, 2015) (dismissing a RICO claim with a conclusory allegation that the "RICO Enterprise functioned as continuing unit" where the complaint "contain[ed] no factual allegations regarding the relationships between or among the RICO [d]efendants").

[6] That Elite has alleged relationships between some of the account owners and other named defendants—namely, Zinatu and the Nwafors, Chunco and Oguejiofor, and Leviton and the Tedd & Brooks Foundation—does not cure the defect in the RICO claims against these defendants. Even

17

"lack[s] any distinct existence and structure[.]" *Mitchell Tracey*, 935 F. Supp. 2d at 843 (first alteration in original) (quoting *VanDenBroeck*, 210 F.3d at 700).

In sum, Elite has not plausibly alleged a RICO violation. The pleading deficiencies apply to all defendants. Thus, the Court will dismiss the RICO claim against all defendants. *See, e.g.*, *Hawkins v. Chick*, No. DKC-09-0661, 2009 WL 4017953, at *7 (D. Md. Nov. 17, 2009) (dismissing, *sua sponte*, RICO claims against remaining defendants because "[the] [p]laintiff has failed to state a civil RICO claim . . . as to any of the defendants").

### IV. Conclusion

For the foregoing reasons, the Court grants the motions to dismiss at ECF 91 and ECF 104. The identity theft and invasion of privacy claims, Counts II and III, are dismissed with prejudice. Because Elite cannot enforce Maryland's criminal law prohibiting identity theft through a civil action or state a claim based on an alleged invasion of its privacy as an unincorporated association, amendment of these claims would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (dismissal with prejudice is appropriate where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"). The civil conspiracy and civil RICO claims, Counts IV and V, are dismissed without prejudice. Elite's breach of contract claim against Chalk Point, Count I, remains. A separate Order follows.

Date: July 28, 2025

Deborah L. Boardman
United States District Judge

---

if this were sufficient to plausibly allege a RICO enterprise, Elite has not plausibly alleged predicate acts or a pattern of racketeering for these defendants.